UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA BELTON, Personal
Representative of the Estate of
JAMES ALAN ELLIS, deceased,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

Civil Action No. 10-14558

HON. BERNARD A. FRIEDMAN
U.S. District Judge
HON. R. STEVEN WHALEN
U.S. Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff Patricia Belton, Personal Representative of the Estate of James Alan Ellis ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her brother James Alan Ellis' ("Claimant's") application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion for summary judgment (Dkt #17) be **DENIED** and Plaintiff's motion (Dkt #13) **GRANTED** to the extent that the case is remanded to the administrative level for further proceedings pursuant to sentence four of § 405(g).

## PROCEDURAL HISTORY

On May 24, 2006, Claimant filed applications for SSI and DIB, alleging disability as of February 15, 2005 (Tr. 78-80, 81-85). After the initial denial of the claims, he filed a request for an administrative hearing, held on June 19, 2009 in Oak Park, Michigan before Administrative Law Judge ("ALJ") Melvyn B. Kalt (Tr. 24). Claimant, represented by attorney William Watkinson, testified (Tr. 27-34) as did Vocational Expert ("VE") Dr. Barrett (Tr. 34-37), and Claimant's sister, Patricia Belton (Tr. 38-42). On July 17, 2009, ALJ Kalt found that Claimant was not disabled (Tr. 21). On October 22, 2010, the Appeals Council denied review (Tr. 1-3). Claimant filed for judicial review of the Commissioner's decision on November 16, 2010. On March 15, 2010, present Plaintiff Patricia Belton, personal representative for Claimant's estate, informed the Court of Claimant's February 3, 2011 death.[1] *Dock. #11, Exhibit 1*. On March 22, 2011, parties stipulated to the substitution of Patricia Belton in her capacity as personal representative for her deceased brother's estate. *Dock. #12*.

## BACKGROUND FACTS

Claimant, born May 21, 1962, was 47 when the ALJ issued his decision (Tr. 21, 78). He completed high school and worked previously as an assembly line worker and roofer (Tr.

---

[1] Mr. Ellis' death certificate states that he died of arteriosclerosis. *Dock. #11, Exhibit 1*. However, his application for benefits does not allege disability as a result of arteriosclerosis or a related condition. Plaintiff's arguments for remand do not address Claimant's cause of death, but rather, pertain to his psychological conditions and whether the ALJ erred by omitting Chronic Obstructive Pulmonary Disease ("COPD") from the Step Two "severe" impairments.

93, 98). His application for benefits alleges disability as a result of a bipolar disorder, diabetes, anxiety, and depression (Tr. 92).

### A. Claimant's Testimony

Claimant denied working since the alleged disability onset date of February 15, 2005 (Tr. 27). He acknowledged that his application for benefits was made on the basis of a "psychiatric disability," noting that he had been diagnosed with bipolar disorder (Tr. 28). Claimant reported that he became anxious when in public places and that anxiety created sleep disruption (Tr. 28-29, 31). He also indicated that as a result of depression, he avoided other people (Tr. 29). Claimant testified that he spent about five days each week indoors and the other two collecting cans (Tr. 30).

Claimant alleged that he regularly performed household and yard chores, but was unable to stay "on task" for more than 10 minutes (Tr. 31-32). He testified that he spent time drawing and building plastic car and truck models (Tr. 32). Claimant reported that he did not have friends, but interacted with his brother and sister on a regular basis (Tr. 32). He alleged that making social connections created anxiety (Tr. 33). Claimant stated that he was currently receiving psychiatric care (Tr. 33). He reported taking Abilify and Seroquel (Tr. 33). He denied medication side effects (Tr. 33).

### B. Testimony by Claimant's Sister

Patricia Belton characterized her brother as a "recluse," stating that his activities were limited to riding his bike "once in a while to go collect cans," and sitting in his room drawing (Tr. 40). She reported that Claimant had to be told repeatedly to finish household chores (Tr.

40).  Belton testified that she took him grocery shopping and to the bank on a regular basis (Tr. 41).  She acknowledged that Claimant administered his own insulin shots and monitored his blood sugar levels (Tr. 42).

### C.      Medical Evidence

#### 1.  Treating Sources[2]

In May, 1998, opthamologist Larry E. Patterson, M.D. found the absence of diabetic retinopathy, but remarked that Claimant should stabilize his blood sugar levels (Tr. 224, 244).  He was assigned a GAF of 45 (Tr. 342).

In May, 2006, an intake assessment by the Christian Counseling Center of Crossville, Tennessee noted that Claimant's unemployment benefits had recently lapsed (Tr. 245).  Claimant admitted that the police had been called to his trailer on occasions when he and his friends were making "too much noise" (Tr. 246).  The assessment conditionally diagnosed Claimant with a "mild but chronic" bipolar disorder (Tr. 247).  May and September, 2006 physical exam notes state that Claimant's lungs were clear to auscultation (Tr. 256, 257).

In February, 2007, a psychological intake evaluation by New Passages assigned Claimant a GAF of 42 as a result of a bipolar disorder and diabetes[3]  (Tr. 301-302).  The

---

[2] Treatment records for conditions unrelated to Claimant's claim for DIB have been reviewed in full, but are omitted from discussion.

[3] A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR* ) (4th ed.2000).

following month, Claimant stated that he was "entirely independent other than the financial help he receive[d] from his parents" (Tr. 287). Claimant reported mood swings, former alcohol abuse, and recent depressive symptoms (Tr. 283). The same month, Edgar Cruz, M.D. found that Claimant experienced a bipolar disorder but found the absence of respiratory problems (Tr. 269). Claimant reported that he felt "good" (Tr. 272).

July, 2008, examination notes indicate a diagnosis of bipolar disorder (Tr. 337). Claimant exhibited normal lung functioning (Tr. 337). August, 2008 therapy records show that Claimant's condition was improving[4] (Tr. 317). In February, 2009, psychiatrist James Hansen, D.O. evaluated Claimant, noting that he was fully oriented but exhibited signs of depression (Tr. 340-341). He found the absence of psychotic symptoms and noted that Claimant behaved appropriately (Tr. 340). Dr. Hansen found the presence of marked limitations in the ability to carry out detailed instructions, concentrate, work with others without distraction, and maintain a schedule (Tr. 342). Dr. Hansen also found marked limitations in social interaction and the ability to adapt to workplace changes (Tr. 343). The following month, psychiatrist Pravin Soni, M.D. found that Claimant's ability to function independently, maintain attention, and carry out job instructions was "poor" (Tr. 344-345). Dr. Soni opined that Claimant experienced an "unstable mania state" (Tr. 345).

In January, 2010, Dr. Soni again evaluated Claimant, noting good hygiene and appropriate behavior in group therapy (Tr. 354-355). He found Claimant's ability to function

---

[4]Transcript pages 318 to 321 are unreadable, viewed either online or in print.

independently "questionable," noting that Claimant angered easily (Tr. 355). Finding "marked" limitations in comprehension, concentration, social interaction, and adaptation, Dr. Soni opined that Claimant was unable to sustain employment due to "mental health issues [and] possible mental deficits" (Tr. 357-358).

### 2. Consultive and Non-Examining Sources

In September, 2006, Jerry Lee Surber, M.D. performed a physical consultive examination on behalf of the SSA (Tr. 251-255). Claimant, a daily smoker, complained of "shortness of breath on minimal exertion" but denied chest pain (Tr. 251, 254). Dr. Surber noted a diagnosis of diabetes (Tr. 251). Claimant's lungs were "bilaterally clear to percussion . . . with no audible wheezes, rales or rhonchi" (Tr. 252). Dr. Surber found that Claimant could lift "at least 10-35 pounds" up to two-thirds of a workday and walk and stand up to six hours in an eight-hour workday (Tr. 254).

In October, 2006 Mark Loftis, M.A. performed a consultive psychological examination of Claimant on behalf of the SSA (Tr. 259-262). Claimant exhibited normal gross and fine motor skills and behaved appropriately (Tr. 259). Claimant reported that he lived in a mobile home (Tr. 259). He denied current legal problems but acknowledged that he lost his driver's license due to alcohol use and was charged with public intoxication (Tr. 260). Claimant reported that he did his own cooking, visited friends, left his home on a daily basis, and made frequent trips to a laundromat (Tr. 260). Claimant was fully oriented with adequate reasoning skills and memory (Tr. 261). Loftis concluded that Claimant's "overall functional limitation [was] in the mild to moderate range" (Tr. 262).

The same month, Dorothy D. Tucker, Ph.D. completed a Psychiatric Review Technique based on Claimant's treating records, finding the presence of a bipolar disorder (Tr. 180, 183). Dr. Tucker cited treating notes stating that Claimant was independent in self care and household chores (Tr. 192). Under the "'B' Criteria," she determined that Claimant experienced moderate restrictions in daily living and social function, but only "mild" deficiencies in concentration, persistence, or pace (Tr. 190). She found Claimant "largely credible," but that his impairments were "less than marked" (Tr. 192). A Mental Residual Functional Capacity Assessment, also performed by Dr. Tucker, found Claimant moderately limited in the ability to interact appropriately with the public and coworkers, respond to workplace changes, and set realistic goals (Tr. 194-195). Dr. Tucker found Claimant otherwise "not significantly limited" (Tr. 194-195). She concluded that he could perform "simple and detailed, non-complex tasks" (Tr. 196).

In June, 2007, Jack Kaufman, M.D., noting a diagnosis of diabetes, performed a non-examining Physical Residual Functional Capacity Assessment on behalf of the SSA (Tr. 198-205). He found that Claimant should avoid machinery and heights due to the risk of hypoglycemia, but was otherwise unlimited (Tr. 202).

The same month, a second Psychiatric Review Technique, performed by Rose Moten-Solomon, found the presence of a bipolar disorder (Tr. 209). Under the "'B' Criteria," she found that Claimant experienced moderate limitations in daily living, social functioning, and maintaining concentration, persistence, and pace (Tr. 216). She noted that Claimant acknowledged that symptoms of bipolar were well controlled with medication and that he

-7-

was able to engage in hobbies and maintain his home and yard (Tr. 218). A Mental Residual Functional Capacity Assessment performed by Dr. Moten-Solomon found that Claimant had moderate difficulty in carrying out detailed instructions, maintaining attention for extended periods, interacting appropriately with the general public and coworkers, responding appropriately to changes in the workplace, and setting realistic goals (Tr. 220-221). She concluded that Claimant could engage in "simple work activity" (Tr. 222).

Also in June, 2007, David L. Hayter, Ph.D. performed neuropsychological testing, noting that Claimant reported that his bipolar medication was working well (Tr. 304). Dr. Hayter described Claimant as "very personable" (Tr. 305). Claimant exhibited a blunted affect and depressed mood but was fully oriented with a good memory (Tr. 306). He achieved a full scale IQ of 79 (Tr. 308). He was deemed moderately impaired in matrix reasoning and significantly impaired in digit symbol testing (Tr. 310). Claimant's Minnesota Multiphasic Personality Test showed an elevated score related to hypochondraisis (Tr. 312). Dr. Hayter found "significant deficits" in attention, memory and abstract reasoning (Tr. 314). He assigned Claimant a GAF of 50 (Tr. 314).

### D. Vocational Expert Testimony

VE Dr. Barrett classified Claimant's former jobs as a laborer, factory worker, landscape worker, and retail worker as unskilled, ranging from "light to heavy" exertion[5] (Tr.

---

[5]
20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50

34). He found that if Claimant's testimony were fully credited, he would be unable to perform any competitive employment due to his need to stay at home five days a week (Tr. 34-35). The ALJ then posed the following hypothetical question:

> "If I were to find the Claimant was limited to performing work that was unskilled, did not involve interacting with members of the general public, and had only minimal interaction with coworkers in supervision, and did not involve anything more than simple one-, two[], and three-step operations, would there be work that he could perform?"

(Tr. 35). The VE replied that given the above limitations, Claimant could perform the unskilled, exertionally light work of a midnight janitor, midnight stock clerk, assembler, and packager, finding the existence of 15,000 positions in the metropolitan area and 25,000 in State of Michigan (Tr. 35).

In response to questioning by Claimant's attorney, the VE stated that if Dr. Hansen's findings regarding "concentration, memory, persistence, and interaction" were credited, Claimant would be unable to perform any work (Tr. 36). He likewise testified that if Dr. Soni's findings were fully credited, Claimant would be unemployable (Tr. 37).

### E. The ALJ's Decision

Citing Claimant's medical records, ALJ Kalt found that Claimant experienced the "severe" impairment of bipolar disorder but that the condition did not meet or medically

---

pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 16). The ALJ determined further that the impairments of COPD and diabetes mellitus were non-severe, finding that neither condition "appear[ed] to cause any limitation[] in his ability to engage in work activity (Tr. 17).

The ALJ found that Claimant retained the residual functional capacity ("RFC") for work at all exertional levels, but would be limited to "unskilled work involving 1-3 step operations, no interaction with the general public, and minimum interaction with co-workers and supervisors" (Tr. 18). Citing the VE's job findings, the ALJ concluded that while Claimant was unable to perform any of his past jobs, he could work as a midnight janitor, midnight stock clerk, assembler, and packager (Tr. 21).

The ALJ discounted Claimant's allegations of disability (Tr. 45). He noted that Claimant told Dr. Loftis that he enjoyed "playing scrabble and visiting friends" and that he left the house on a daily basis (Tr. 19). He cited Dr. Hayter's June, 2007 observations that Claimant was personable and would not experience problems interacting or performing simple work (Tr. 19). He rejected Drs. Soni and Hansen's findings of extreme limitation, stating that the opinions were not consistent with "their own treatment records" (Tr. 19).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more

than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she

can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## **ANALYSIS**

Plaintiff makes five arguments in favor of remand. First, she argues that the ALJ erred by failing to discuss or even mention her hearing testimony in the administrative opinion. *Plaintiff's Brief* at 12-13 (*citing* Tr. 40-42). Second, she contends that the ALJ improperly rejected the disability opinions of Drs. Soni and Hansen. *Id.* at 13-15. Third, she argues that the ALJ erroneously placed controlling weight on the opinion of a non-examining source. *Id.* at 15-16. Fourth, she contends that the ALJ erred by finding that COPD was a "non-severe" condition at Step Two of the administrative sequence. *Id.* at 16-17. Last, citing the VE's testimony, Plaintiff argues that the testimony of her brother and herself, along with the opinions of Drs. Soni and Hansen, support a disability finding. *Id.* at 17-18.

The arguments will be considered out of sequence, starting with one, then four, then two, three, and five in tandem.

### A. The Testimony of Plaintiff Patricia Belton

Plaintiff argues that the ALJ erred by omitting mention of her testimony in the administrative opinion. *Id.* at 12-13. Citing SSR 96-7p, she contends that in making his determination, the ALJ was required to consider statements by "'other persons about the

symptoms and how they affect the individual.'" *Plaintiff's Brief* at 12-13 (*citing* 1996 WL 374186 at *1–2).

Contrary to Plaintiff's contention, the failure to address lay testimony does not constitute error *per se*. "The test is whether the ALJ adequately addressed the line of evidence to which the lay person's testimony was directed." *Ware v. Apfel,* 2000 WL 1707942, *9 (S.D.Ind.2000)(citing *Herron v. Shalala,* 19 F.3d 329, 337 (7th Cir.1994); *see also Rogers v. Commissioner of Social Sec.,* 486 F.3d 234, 248, fn 5 (6th Cir. 2007).

Here, Belton's brief testimony mirrored Claimant's account of his own limitations and thus does not amount to an independent "line of evidence." For example, Claimant stated that he avoided other people; Belton testified that he was a recluse (Tr. 40). Claimant reported that he was unable to stay on task for more than 10 minutes; Belton testified that Claimant had to be reminded to finish projects and was unable to stay focused for more than 15 minutes (Tr. 31-32, 41). Claimant alleged anxiety in public places; Belton testified that Claimant felt that when he went out in public, "everyone picks on him" (Tr. 28-29, 31, 41).

In turn, the ALJ discussed Claimant's allegations that he "does not like to be around people" (Tr. 18), was unable to finish projects (Tr. 19), and became "anxious just going to the store" (Tr. 18). Because this "line of evidence" was well discussed, he was not required to cite Belton's restatement of her brother's allegations. *See Pelfrey v. Com'r of Social Sec.* 2010 WL 909134, *15 (S.D.Ohio,2010)(citing *Allison v. Comm'r of Soc. Sec.,* No. 96-3261, 1997 WL 103369, *3 (6th Cir. 1997))(ALJ not required to discuss redundant testimony); *see also Carlson v. Shalala,* 999 F.2d 180 (7th Cir.1993)(same).

### B. A Non-Severe Impairment

Plaintiff argues that the ALJ erred by finding that Claimant's COPD was a non-severe impairment at Step Two of the administrative sequence. *Plaintiff's Brief* at 16-17 (*citing* Tr. 17). She cites Dr. Surber's September, 2006 consultive examination notes which state that Claimant experienced "[s]hortness of breath on minimal exertion with no chest pain, consistent with ongoing and progressive, chronic obstructive pulmonary disease." *Plaintiff's Brief* at 16-17 (*citing* Tr. 54). She also contends that Dr. Surber's finding that Claimant was limited to work at the light level of exertion (Tr. 254) supports the finding that COPD created work restrictions. *Plaintiff's Brief* at 16-17.

"[T]he second stage severity inquiry, properly interpreted, serves the goal of administrative efficiency by allowing the Secretary to screen out totally groundless claims." *Farris v. Secretary of HHS,* 773 F.2d 85, 89 (6th Cir.1985). An impairment can be considered "not severe ... only if the impairment is a 'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.' " *Id.* at 90 (citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir.1984)). 20 CFR § 416.921(a) defines a *non*-severe impairment as one that does not "significantly limit [the] physical or mental ability to do basic work activities."

Notwithstanding Dr. Surber's findings, substantial evidence easily supports the ALJ's finding that Claimant's COPD was non-severe. First, Dr. Surber's notes do not state whether Claimant actually exhibited symptoms of COPD during the examination or simply alleged

that he experienced shortness of breath upon exertion. Dr. Surber's observation that Claimant's lungs "were bilaterally clear to percussion and auscultation, with no audible wheezes, rales or rhonchi" supports to the latter interpretation (Tr. 252). Second, the transcript otherwise supports the conclusion that COPD was a non-severe impairment. Claimant did not allege limitations as a result of COPD in his application for benefits. March, 2007 examination records note the absence of respiratory problems (Tr. 269). Physical examination notes created in July, 2008 show normal lung functioning (Tr. 337). Although Claimant was a daily smoker, he did not seek treatment for respiratory problems and none of the treating records show that he complained of limitations as a result of COPD. Because substantial evidence supports the ALJ's finding that COPD was non-severe, remand on this basis is not appropriate.

### C. The "Treating Physician" Material

Plaintiff's second argument is that the ALJ erred by discounting opinions of treating psychiatrists Drs. Hansen and Soni. *Plaintiff's Brief* at 13-15. She contends that their findings of "marked" social, adaptive, and workplace limitations ought to have been adopted. *Id.* In an overlapping argument, Plaintiff contends that the ALJ commit reversible error by adopting the findings of Dr. Tucker, a non-examining source. *Plaintiff's Brief* at 15-16. Plaintiff's fifth argument reasserts that the findings of Drs. Hansen and Soni, if adopted, would result in a finding of disability. (Tr. 17-18).

"If the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir.2009) (internal quotation marks omitted)(citing *Wilson,* 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2)). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, *see Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391–392 (6th Cir.2004), provided that he supplies "good reasons" for doing so. *Wilson,* at 547; 20 C.F.R. § 404.1527(d)(2).[6]

For the reasons discussed herein, the undersigned is unable to determine whether the ALJ complied with the requirements of a treating physician analysis.

In rejecting the treating psychiatrists' opinions, the ALJ stated that Dr. Hansen's and Dr. Soni's opinions were not supported by objective findings (Tr. 19). Specifically, the ALJ stated that he rejected Dr. Hansen's findings after reviewing the physician's treating notes found at Exhibits 14F, 16F, and 17F (Tr. 19). However, more than half the pages of Exhibit 17F are blacked out and thus unreadable (Tr. 318-321). The exhibit containing unreadable documents, cited by the ALJ in support of his rejection of Dr. Hansen's opinion, is thus relevant to the treating physician analysis and the ultimate non-disability finding.

A footnote from the transcript index states that "[t]he documents and exhibits contained in this administrative record are the best copies obtainable." The undersigned

---

[6]

In explaining reasons for rejecting the treating physician opinion, the ALJ must consider "the length of the ... relationship and the frequency of examination, the nature and extent of the treatment[,] ... [the] supportability of the opinion, consistency ... with the record as a whole, and the specialization of the treating source." *Wilson,* at 544.

cannot determine at what point in the administrative process that presumably readable treating records were reproduced into their present, unreadable form. Even assuming that the ALJ received readable copies of these pages, it is not certain that the Appeals Council had access to readable copies. If not, the Council would have been unable to conduct a meaningful review of the ALJ's treating physician analysis. *See Pierce v. Apfel,* 173 F.3d 704, 708 (8th Cir.1999) ("Unreadable records are of no value to the ALJ, the Commissioner, the district court, or this court. It is the responsibility of the Commissioner to make sure that a complete, readable, medical record is available to all parties").

Likewise, without reviewing Dr. Hansen's complete treating records, the undersigned is unable to determine whether the ALJ's rejection of the psychiatrist's disability opinion is supported by the record. "It is quite obvious that the purpose of requiring the Secretary to supply the reviewing court with the administrative record is thwarted if the Secretary supplies documents that the reviewing court cannot read." *Harvey v. Bowen,* 1986 WL 12011, *5, fn 1 (N.D.Ill.1986);*See also Ozier v. Barnhart,* 2004 WL 2038540, *9 (N.D.Ill.2004)("[U]nreadable" progress notes "cannot be used to" reject a claimant's allegations).

Moreover, the alternative possibility that the critical pages were already indecipherable when presented to the ALJ would have required him to request readable records from Dr. Hansen. 20 C.F.R. § 416.912(e). When the evidence received from a treating source is inadequate to determine disability, the agency should recontact the source for "additional evidence or clarification." *Id.* The ALJ has a "duty to clarify" when presented

-17-

with incomprehensible records. *Williams v. Astrue*, 2010 WL 431432, *7 (C.D. Cal.2010)(*citing Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir.2001)); *see also Cutler v. Weinberger,* 516 F.2d 1282, 1285 (2nd Cir.1975)("Where the medical records are crucial to the claimant's claim, illegibility of important evidentiary material has been held to warrant a remand for further clarification and supplementation"). Likewise here, clarification and supplementation is required to guarantee that 1). the treating physician analysis is supported by the record and, if applicable 2). the Appeals Council and District Court can conduct a meaningful review of the ALJ's decision.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's motion for summary judgment (Dkt #17) be **DENIED** and Plaintiff's motion (Dkt #13) **GRANTED** to the extent that the case is remanded to the administrative level for further proceedings pursuant to sentence four of § 405(g).

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v.*

*Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

            s/ R. Steven Whalen
            R. STEVEN WHALEN
            UNITED STATES MAGISTRATE JUDGE

Date: November 4, 2011

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on November 4, 2011.

            s/Johnetta M. Curry-Williams
            Case Manager